## THE KENTUCKIAN.

## THE MARY E. MESECK.

## THE JOHN ARBUCKLE.

District Court, S. D. New York.
April 21, 1930.

Park, Mattison & Lynch, of New York City (Henry E. Mattison, of New York City, of counsel), for libelant.

Foley & Martin, of New York City (J. A. Martin, of New York City, of counsel), for the Mary E. Meseck.

Palmer & Furman, of New York City (John K. Hartley, of New York City, of counsel), for the John Arbuckle.

WOOLSEY, District Judge.

I find the Arbuckle solely to blame for the collision hereinafter described.

The libel will therefore be dismissed with costs to the Meseck, and the libelant may have an interlocutory decree against the Arbuckle.

The collision which is the subject-matter of this suit occurred in the Hudson River at about 6:30 a. m. on March 8, 1927, about six hundred or seven hundred feet off Pier 1.

It was daylight at the time. The weather was clear. There was not any wind worthy of note and the tide was just at the turn of the ebb.

The Meseck, with the cattleboat Kentuckian on her starboard side, was bound from Jersey City to Gold street, Brooklyn.

The Arbuckle had a carfloat carrying fourteen loaded cars on her starboard side and was bound from the Jay Street Terminal to Weehawken.

At the time when the two tugs first sighted each other, the Arbuckle, with her carfloat, had just rounded the Battery at a distance of about four or five hundred feet therefrom and was heading up river, though angling slightly towards the New Jersey shore.

The Meseck was in the North River about off Pier 11, edging in towards the New York side to round the Battery.

Just before the Meseck first saw the Arbuckle, she had exchanged one-whistle signals with the Sound steamer Mohegan, which she had passed port to port at a distance of about three or four hundred feet.

As the Arbuckle rounded the Battery, she blew a two-whistle signal to the Meseck; and the Meseck replied with two whistles.

They were then, I think, in such a position that their courses were so far on the starboard side of each other that an exchange of two whistles embodying an agreement to pass starboard to starboard was justified under the second part of article 18, rule 1 of the Inland Rules.

If the agreement to pass starboard to starboard, thus initiated by the Arbuckle, had been properly followed up by her, the Meseck would have passed her starboard to starboard safely with a distance of from one hundred and fifty to two hundred feet between them.

Instead of maneuvering so as to effectuate her agreement with the Meseck, the Arbuckle was seen to take a sudden sheer to starboard, with the result that the starboard forward corner of her carfloat struck the cattleboat Kentuckian, of which the Meseck had charge, about amidships of the latter's starboard side, causing the damage complained of herein. Attempts of both tugs to avoid the collision by reversing just before the contact were unsuccessful.

There is here the not uncommon apparently irreconcilable conflict between the evidence

for the two tugs, but any doubts that might have arisen in my mind as to the true story of the collision are resolved in favor of the Meseck by the excellent impression made on me by her lookout—who was no longer in the employ of her owner—and on the fact that the Meseck's story is in practically all respects confirmed by the three independent witnesses from the Mohegan who were examined on her behalf and who heard and saw the signals exchanged between the tugs and watched the collision.

If I am mistaken as to the relative courses of the two flotillas when they exchanged their two-blast signals, and if they should be considered to be on crossing courses with the Arbuckle as the privileged vessel, the result as to the Arbuckle's fault is not changed, for by her two-blast signal she waived her privilege, and after that waiver was agreed to by the Meseck the Arbuckle should have so maneuvered as to have carried out her agreement and kept out of the Meseck's way by passing to the starboard and astern of her. Cf. The Socony No. 5, 285 F. 154, 155 (C. C. A. 2).

Any costs which the libelant may have to pay to the tug Meseck may be recovered by it in the final decree as against the Arbuckle.

An interlocutory decree may be presented for signature on three days' notice.